1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

**FABRICA DE MUEBLES J. J. ALVAREZ, INC.**

    **Plaintiff,**

       **v.**

**WESTERNBANK DE PUERTO RICO AND INVERSIONES MENDOZA, INC., et al.**

    **Defendants.**

**Civil Action No. 09-1558 (GAG)**

## OPINION AND ORDER

On June 19, 2009, the plaintiff in this case, Fabrica de Muebles J. J. Alvarez, Inc. ("Plaintiff" or "Alvarez"), commenced this action to recover its monies, which are the product of the sale of goods left in consignment with co-defendant Inversiones Mendoza Inc. ("Mendoza"). Plaintiff alleges its monies were misappropriated by defendant Westernbank de Puerto Rico ("Westernbank" or "the bank") through its daily removal of said monies, allegedly held in escrow by Westernbank. This action is brought pursuant to Title IX of the Organized Crime Control Act of 1970, as amended, otherwise known as the Racketeer Influence and Corrupt Organization Act ("RICO"), in particular, §18 U.S.C. 1964 in its civil context, as well as Articles 1061, 1077, 1206, of the Puerto Rico Civil Code, 31 P.R. Laws Ann. tit. 31 §§ 3025, 3018, 3371. Plaintiff also moves to foreclose on a property owned by Westernbank, to which Plaintiff is a first rank mortgage holder.

Presently before the court is Defendant's Motion to Dismiss (Docket No. 28), which was timely opposed by Plaintiff (Docket No. 38). After reviewing the pleadings and pertinent law, the court **GRANTS** in part and **DENIES** in part defendant Westernbanks's Motion to Dismiss. (Docket No. 28.)

**Civil No. 09-1558 (GAG)**                              2

**I.     Standard of Review**

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted.  See Fed.R.Civ.P. 12(b)(6).  When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).  In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor.  Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

In sum, when passing on a motion to dismiss the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense. Id. at 1949-50 (citing Twombly, 550 U.S. at 555-56).  In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief.  Iqbal 129 S. Ct. at 1950.

**II.     Relevant Factual & Procedural Background**

On or about December 1, 2004, Alvarez entered into written agreements to sell a furniture store, including the occupied real estate ("the property") and the goods contained therein ("the consigned goods"), to Mendoza.  Before the store and equipment was delivered to Mendoza, it had been agreed by Alvarez, Mendoza, and Westernbank that the bank would finance the transaction. At the time of the closing, Westernbank provided funds for a partial payment for the property and

**Civil No. 09-1558 (GAG)**                    3

obtained a first mortgage to guarantee the loan, as well as other monies which Mendoza owed to the bank.  The unpaid portion of the sale became a deferred payment, and a mortgage note for $750,000.00 was signed by Mendoza.[1]

On December 1, 2004, as part of its requirements for closing the transaction, Westernbank demanded that a written consignment contract be drawn and submitted to the bank for its approval. In response to this demand, a consignment agreement was generated between Alvarez and Mendoza, which established that all the consigned goods in the hands of Mendoza were, and would remain, the exclusive property of Alvarez, as would be the product of the sale of said goods.  Under the agreement, the product of these sales, together with all sales records and related documents, would be delivered to Alvarez.  Alvarez would then pay Mendoza the corresponding amounts in accordance with the consignment agreement.

At the time of the agreement, consigned goods, with a cost of $1,503,900 were deposited with Mendoza.  These goods had an expected sales value of more than $6,000,000.00.  Plaintiff avers that an escrow[2] account was established at Westernbank on August 29, 2004, for the purpose of depositing the funds generated from the sale of the consigned goods.  Plaintiff further claims that Westernbank agreed to hold and manage said account for the benefit of Alvarez, and to make, or allow, regular payments, to Alvarez from said account.[3]

The account was opened at Westernbank under the name of Francisco Mendoza, Inc. d/b/a

---

[1] The note also provided $75,000.00 for interest and $75,000.00 for legal fees in the event of foreclosure.

[2] Defendant Westernbank objects to the classification of this account as an escrow account.

[3] Westernbank refutes Plaintiff's contention that the bank agreed to hold and manage this account for the benefit of anyone other than the bank.  It denies that any fiduciary relationship existed between itself and Alvarez, as the bank was not party to the consignment agreement between Alvarez and Mendoza.  This contention by the bank is disputed by the signed affidavit of Juan Jesus Ramirez-Rivera. (See Docket No. 1–11.)

**Civil No. 09-1558 (GAG)**                          4

J. J. Alvarez, Account No. 204013356 ("the consignment account").  At the time that the account was opened, Mendoza was party to a separate security agreement with Westernbank, requiring that Westernbank have control of all accounts where Mendoza deposited funds.  Plaintiff avers that the bank's power over Mendoza and its finances as a product of  this security agreement, made Mendoza's contractual representations meaningless unless the bank would commit to comply with the consignment contract.  Therefore, Plaintiff, acting upon the assurances of Westernbank, entered the agreement, assuming the bank would comply with its promise to hold and manage the consignment account for the benefit of Alvarez.  Plaintiff alleges that Westernbank made these assurances in an effort to persuade Alvarez to agree to the deal, but had no intention of complying with the consignment agreement between Alvarez and Mendoza.

Plaintiff further alleges that all of the money earned from sales of the consigned goods, both money deposited in the consignment account as well as money gained through separate credit and debit purchases, was used by the bank for its own purposes and to eventually pay itself in partial satisfaction of alleged debts owed by Mendoza.  The consignment account was swept daily by the bank, leaving nothing of the approximate $1,250,000.00 deposited in the account by Mendoza.  The money swept from the account was transferred to another account owned solely by Westernbank, Account No. 060204011107.  Similarly, Plaintiff alleges that the product of two and a half years of credit and debit card sales of the consigned goods (approximately $4,500,000.00) was deposited in separate accounts at banks that provided credit card service and then transferred to Westernbank.  Said funds were never deposited into the consignment account.[4]

Plaintiff also alleges that in accordance with Westernbank's security agreement with Mendoza, all funds received by Mendoza had to be deposited in accounts controlled by Westernbank.  In order to make any payments, Mendoza would have to justify the expense to

---

[4] Plaintiff alleges that this money, which allegedly belonged to Alvarez, was at all pertinent times deposited in bank accounts insured buy the Federal Insurance Deposit Corporation ("F.D.I.C.") and was therefore subject to Federal regulations.

**Civil No. 09-1558 (GAG)**                      5

Westernbank, which would then make the funds available to Mendoza for use.  These actions, the

Plaintiff alleges, were done to defraud the I.R.S. and strip Mendoza's employees of their funds and

benefits under the law.[5]

     Plaintiff contends that the control of Westernbank over Mendoza was absolute.  During all

periods pertinent to this lawsuit, Westernbank was the beneficiary of an irrevocable proxy, signed

by the main stockholders of Mendoza.  Plaintiff claims that this proxy gave Westernbank full power

over Mendoza's stockholder and Board of Director meetings.  Plaintiff avers, that it was this

domineering presence that prevented Mendoza from transferring the product of the consigned goods

to Alvarez. Utilizing this control, the bank permitted Mendoza to make partial payments to Alvarez,

but did not permit it to use the monies held in the escrow account.  Instead, Westernbank required

Mendoza to make the payments from a separate rotating account.  Mendoza made these payments,

amounting to $366,433.00, using money loaned to it by the bank, further exacerbating its financial

troubles.

     Mendoza, unable to pay its accumulating debts, eventually defaulted on its payments to

Alvarez for the deferred portion of the property purchase.  As a result of its debts, Mendoza filed for

Chapter 11 bankruptcy.  Alvarez, as holder of the mortgage note representing the deferred payment,

filed its proof of claim in Bankruptcy Court. On September 14, 2007, following Mendoza's

bankruptcy petitions, Westernbank filed an Interpleader Complaint (Docket No. 28-2), claiming that

it had legitimate reasons to fear overlapping liability with respect to the funds which had been

deposited in the consignment account.  The bank claimed that they did not know who was rightfully

entitled to the funds in the consignment account, which at the time of the filing of Mendoza's

_____

     [5] Because of its subordinate position under the arrangement, Mendoza was unable to allocate
the monies in order to pay sales taxes, social security taxes and other payroll taxes and contributions
to its employees.  The failure to make these payments resulted in a very substantial debt to the I.R.S.,
as evidenced in Mendoza's bankruptcy schedules.  (See Docket No. 1-17.)

**Civil No. 09-1558 (GAG)**                                  6

bankruptcy petition allegedly contained only $241,571.90.[6]

On December 9, 2008, Plaintiff and Mendoza signed a settlement agreement forgiving Mendoza's unpaid debts. Under the agreement, Plaintiff agreed not to collect the outstanding claims it had against Mendoza in exchange for an agreement to a lift of stay which would allow Plaintiffs to collect whatever amounts it could by foreclosing on the guarantees securing the claims in question. Prior to the signing of this agreement, Mendoza also had signed an agreement with Westernbank. In exchange for release by the bank, from any and all debts owed to the bank by Mendoza, Mendoza agreed to transfer all of its real estate holdings to the bank. Such holdings included the property in question, which is now fully owned by Westernbank. Contrary to this agreement, the property registry at Mayaguez, Puerto Rico, indicates that Mendoza is the current owner of the property.

**III.     Discussion**

1.     *The RICO claim*

The RICO Act, 18 U.S.C. §§ 1962 et seq., provides civil liability for individuals engaged in a pattern of racketeering activity. See 18 U.S.C. § 1962. The Act proscribes three distinct patterns of activity as defined in 18 U.S.C. § 1962 (a)-(c).[7] Plaintiff in this case has alleged RICO violations

---

[6] In the interpleader complaint, Westernbank claims it does not know who the rightful owner of the funds is because they were not a party to the consignment agreement. This contention clearly contradicts Plaintiff's allegations that Westernbank was aware of the agreement and had agreed to hold the funds in an escrow account. (See Docket No. 1-11.) The court also finds the language of the interpleader somewhat contradictory when compared with the bank's assertions that it had made no agreements whatsoever that the funds in the consignment account be held in escrow for Alvarez.

[7] The RICO Act reads in pertinent part:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or

**Civil No. 09-1558 (GAG)**           7

under subsections (a), (c), and (d).  (<u>See</u> Docket No. 1 at 30, 35.)

"To state a claim under section 1962(c) [or (a)], a plaintiff must allege each of the four elements required by the statute: (1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity."  <u>North Bridge Ass., Inc. v. Boldt</u>, 274 F.3d 38, 42 (1st Cir. 2001).  A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4)  The 'person' alleged to be engaged in racketeering activity (the defendant, that is) must be an entity distinct from the 'enterprise' under § 1962(c)." <u>Odishelidze v. Aetna Life & Casualty Co.</u>, 853 F.2d 21, 23 (1st Cir. 1988) (citing <u>Schofield v. First Commodity Corp. of Boston</u>, 793 F.2d 28, 29-30 (1st Cir. 1986)).  Even if the enterprise is blameworthy for the underlying actions, it cannot also be answerable as a defendant under § 1962(c).  <u>Miranda v. Ponce Federal Bank</u>, 948 F.2d 41, 45 (1st Cir. 1991).

Racketeering activity includes such acts relating to financial institution fraud, mail fraud, and wire fraud.  <u>See</u> 18 U.S.C. § 1961 (1)(B).  "[A] successful RICO plaintiff seeking to establish a pattern must show at least two predicate acts of 'racketeering activity[.]'" <u>Efron v. Embassy Suites (P.R.), Inc.</u>, 223 F.3d 12, 15 (lst Cir. 2000). "In addition, the plaintiff must demonstrate that the 'predicates are related, and that they amount to or pose a threat of continued criminal activity.'" <u>Id.</u> (quoting <u>H.J. Inc. V. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 239 (1989)).  "Predicate acts can

---

indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

8 U.S.C. § 1962 (a), (c), (d).

**Civil No. 09-1558 (GAG)**                8

satisfy the requirement of continuous criminal activity if they either comprise a closed series of past conduct that extends over a substantial period of time or indicate a realistic prospect that they will extend indefinitely into the future[.]" Northbridge Ass., Inc., 274 F.3d at 43 (internal quotations omitted).

To be liable under § 1962(a), a person must receive income from a pattern of racketeering activity and use or invest the proceeds of that income in the establishment or operation of any enterprise engaged in interstate commerce. See 18 U.S.C. § 1962(a). "In proving a right to recover for a RICO violation premised upon § 1962(a), the plaintiffs ha[ve] to prove that they were harmed by reason of [the defendant's] use or investment of income derived from a pattern of racketeering activity in some enterprise . . . engaged in interstate or foreign commerce." Compagnie De Reassurance D'Ile De France v. New England Reins. Corp., 57 F.3d 56, 91 (1st Cir. 1995). "[T]he plaintiff must allege an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves." Id. (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1188 (3d Cir. 1993)).

To state a claim for conspiracy under § 1962(d), a plaintiff must allege "the existence of at least one overt act by a defendant in furtherance of the conspiracy and the assent of each defendant to the conspiracy." Salinas v. United States, 522 U.S. 52, 65 (1997). "An actionable claim under section 1962(d) . . . requires that the complainant's injury stem from a predicate act within the purview of 18 U.S.C. § 1961(1). Miranda, 948 F.2d at 48.

The court finds that Plaintiff's claim under § 1962(a) is legally insufficient to survive a motion to dismiss. In its complaint, Plaintiff has failed to allege any injury actionable under this section of the RICO statute. Plaintiff's only alleged injuries are those directly caused by the underlying misappropriations of the funds. The subsequent use or investment of these funds has not resulted in any injury distinct from that caused by the predicate acts averred by Plaintiff. Under First Circuit precedent, a failure to allege such an injury compels the dismissal of a claim under § 1962(a). See Compagnie De Reassurance D'Ile De France, 57 F.3d at 91 (describing First Circuit's adoption of the "investment use rule").

**Civil No. 09-1558 (GAG)**                    9

Plaintiff's claim under § 1962(d) also fails to state a legally cognizable claim.  Plaintiff asserts a series of possible RICO violations, yet none of the alleged violations constitute a viable conspiracy charge.  To succeed under § 1962(d) a plaintiff must show that the defendants were parties to an unlawful agreement or that defendants knowingly agreed to further its affairs through the commission of various offenses.  See Miranda, 948 F.2d at 47- 48; see also First City National Bank & Trust v. Federal Deposit Insurance Co., 730 F.Supp. 501 (E.D.N.Y. Jan.16, 1990) (dismissing claim under 1962(d) because no agreement shown between named defendants).  The only potential conspiratorial agreement alleged by Alvarez is between Westernbank and Mendoza. However, under this alleged conspiracy, Mendoza would have to act as both a defendant and enterprise for purposes of a RICO conspiracy.  Under First Circuit precedent, the same entity cannot do "double-duty" as both a RICO defendant and enterprise.  See Miranda, 948 F.2d at 44-45 (affirming dismissal of RICO claim where named defendant was also the enterprise); see also infra Section 1(A).  As Alvarez has failed to recognize an unlawful agreement between two legally cognizable RICO parties, the court must dismiss Plaintiff's claim under § 1962(d).

With respect to Plaintiff's claim under § 1962(c) the court will address each of the elements that must be pled under the RICO Act.  As previously cited in this opinion, "[t]o state a claim under section 1962(c), a plaintiff must allege each of the four elements required by the statute: (1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity."  North Bridge Ass., 274 F.3d at 42.

### A.     *Distinct Enterprise*

The bank avers that Alvarez's claim under § 1962(c) fails because it has failed to identify a distinct RICO enterprise.  Under the law, the persons alleged to be engaged in racketeering activity must be a distinct entity, "employed by or associated with" the enterprise.  See Libertad v. Welch, 53 F.3d 428, 442 (1st Cir. 1995); see also Compagnie De Reassurance D'ile De France, 57 F.3d at 92 (citing Brittingham v. Mobil Corp., 943 F.2d 297, 302-03 (3d Cir.1991) (noting that § 1962(c) claims may be dismissed "when the enterprise and defendant, although facially distinct, are in reality no different from each other")).  Alvarez contends that it has clearly identified an enterprise as

**Civil No. 09-1558 (GAG)**                    10

required under the statute.  In its opposition, Plaintiff alleges RICO violations at three different

levels[8] and in doing so identifies a number of actors that it claims satisfy this pleading requirement.

Plaintiff's First level designations evidence how the involved parties demonstrate a type (a)

violation.  At the Second level, Plaintiff contends that Mendoza is the "enterprise," labeling

Westernbank as the sole "actor" responsible for the alleged racketeering activity, which it conducted

by utilizing its control over Mendoza.  At the third level, Alvarez points to individual unidentified

actors within the ranks of Westernbank,[9] claiming that these individual actors (the defendants)

utilized their positions within the bank (the enterprise) to control Mendoza (another enterprise) and

misappropriate the Plaintiff's funds.

In Plaintiff's clarification of the issue, the court finds that Alvarez has sufficiently alleged

the existence of a defendant, who, acting on behalf of or in place of the enterprise, could be found

liable for racketeering activity.  See 18 U.S.C § 1962(c) (establishing liability for "any person

employed by or associated with" the enterprise).  The court finds that the designations illustrated at

the Second and Third level are sufficient to establish these two required entities.[10]  Plaintiff's

averments demonstrate the banks daily withdrawals from the alleged escrow account, which were

made possible through its control over Mendoza's direction and finances. (See Docket Nos. 1-7; 38-

---

[8] The level designations (First, Second, and Third) are the subtitles used by Plaintiff in its opposition. (See Docket No. 38 at 14-26.)

[9] Alvarez labels these actors as John Doe, Richard Doe, etc. in its complaint.  There is no further detail provided for these allegations, as Plaintiff contends such information is only attainable through full or limited discovery.  While these actors may be individually liable, their liability cannot act as a basis for the liability of the bank.  See Miranda, 948 F.2d at 45 (recognizing that "Section 1962(c) does not recognize corporate liability on the enterprise's part under a theory of *respondeat superior*").

[10] Plaintiff's First level designations demonstrate a legally cognizable enterprise under a type (a) violation.  However, because Plaintiff's allegations fail to demonstrate a type (a) injury, these designations are inapplicable.

**Civil No. 09-1558 (GAG)**                  11

2; 39-3).  Westernbank, although in control of both the finances and operations of Mendoza, was involved in separate operations, the former being a bank and the latter involved in the import and sales of furniture.  Under First Circuit precedent, if a parent's activities are sufficiently distinct from those of the subsidiary at the time that the alleged RICO violations occurred they may be considered separate entities for purposes of RICO liability.  See Bessette, 230 F.3d at 449 (citing Brannon v. Boatmen's First National Bank of Oklahoma, 153 F.3d 1144, 1148 (10th Cir.1998) ("[A]t a bare minimum, an allegation of RICO liability under 1962(c) must indicate how the defendant used the alleged enterprise to facilitate the fraudulent conduct.")); see, e.g. Compagnie De Reassurance D'Ile De France, 57 F.3d at 92 (finding entity and defendant are wholly indistinct when "entity" is merely a subsidiary corporation, and there is no evidence that subsidiary took any actions independent of its parent).

                    **B.      Predicate Acts**

        The bank further avers that Alvarez's complaint fails to plead legally cognizable predicate acts.  "The predicate acts of which the RICO statute speaks are, basically, acts indictable under any one or more of certain specified criminal laws."  Feinstein v. Resolution Trust Corp., 942 F.2d 34, 42 (1st Cir. 1991) (citing 18 U.S.C. § 1961(1)(B)).  "It is settled law in this circuit that Fed.R.Civ.P. 9(b), which requires a party to plead fraud with particularity, extends to pleading predicate acts of mail and wire fraud under RICO."  Id. at 42.  The bank contends that Alvarez has failed to meet the particularity requirements of rule 9(b) in pleading the existence of the predicate acts of mail and wire fraud and therefore its claim should fail.  See North Bridge Ass., 274 F.3d at 43 (affirming dismissal of RICO claim where "time, place and content of alleged mail and wire communications perpetrating [] fraud" were not alleged).

        In response, Plaintiff contends that while its allegations of mail and wire fraud may lack specificity,[11] it has sufficiently pled legally cognizable predicate acts in the form of a two and a half

_____

    [11] Plaintiff avers that the specifics surrounding the allegations of wire fraud will only be obtainable through discovery, as all of the information regarding the wire financial transactions is

**Civil No. 09-1558 (GAG)**                    12

year period in which the bank engaged in bank fraud.  18 U.S.C. § 1961(1)(B) lists financial

institution fraud, 18 U.S.C. §1344, as a predicate act under RICO.  Under § 18 U.S.C. § 1344(2),

Bank fraud is defined as "obtain[ing] any of the moneys, funds, credits, assets, securities, or other

property owned by, or under the custody or control of, a financial institution, by means of false or

fraudulent pretenses, representations, or promises[.]"

     Plaintiff alleges, through the use of documentation, that Westernbank was both aware of and

had agreed to abide by the consignment agreement between Mendoza and Alvarez.  (See Docket

Nos. 1-8; 1-9 at 1; 1-11 at 4)     Therefore, Westernbank was aware at all times that the funds

deposited in the escrow account belonged to Alvarez and were, therefore, not subject to the bank's

financial arrangements with Mendoza.  Plaintiff further alleges that the bank, acting with this

knowledge, made two and a half years of specific, daily, withdrawals of funds deposited in accounts

under its control, funds which allegedly the bank had represented would be kept separate from

Mendoza's and paid promptly to Alvarez.  Of the approximate $1,250,000.00 deposited in the

account, only $241,571.90 has been marked as belonging to Alvarez.[12] (See Docket No. 28-2).

Additionally, Plaintiff alleges that it has not received approximately $4,500,000.00 in debit and

credit sales of the consigned goods, which the bank was allegedly aware also belonged to Alvarez.

     The court finds that Plaintiff's fraud allegations meet or exceed the pleading requirements

of Rule 9(b).  See Fed.R.Civ.P. 9(b) ("In alleging fraud or mistake, a party must state with

under the sole control of Westernbank. Therefore, in this instance, the court is more willing to relax
these pleading requirements with regards to Alvarez's claims.  Cf. Efron, 223 F.3d at 16 (not
applying rationale for relaxation of pleading requirements because alleged fraudulent documents
were sent to plaintiffs).  Regardless, because of its inability to plead the wire fraud with specificity,
Alvarez successfully grounds its RICO claim under the predicate acts of bank fraud. With respect
to the mail fraud specifically, Plaintiff points to three letters sent by Westernbank, which Alvarez
alleges were sent to advance the closing of the sale (See Docket Nos. 1-8; 1-9), and then to cover
up the alleged misappropriation of the funds. (See Docket No. 39-4.).

    [12] This amount represents the amount that Westernbank claimed was in the account when it
filed its interpleader complaint.  (See Docket No. 28-2.)   In addition, four payments equaling
$366,433.00 were made by Mendoza to Alvarez. (See Docket No.1-10.) These payments were first
applied to interests, penalties, and rent.

**Civil No. 09-1558 (GAG)**                    13

particularity the circumstances constituting fraud or mistake . . . ").  In addition to the requirement
to specify the false statements and by whom they were made, Rule 9(b) requires a plaintiff to identify
the basis for inferring *scienter*.  North American Catholic Educational Programming Foundation, Inc.
v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009).  The court finds that Alvarez has successfully
demonstrated the basis for this inference by highlighting numerous facts which support its
allegations: Westernbank's letters regarding the consignment agreement (Docket Nos.1-8; 1-9 at 1;
1-11 at 4);[13] the alleged value of the consigned goods; the bank's present refusal to return the
allegedly misappropriated funds or explain the disappearance of the missing funds; the accounting
of daily withdrawals made from the escrow account (Docket No. 1-7); and the alleged
misrepresentations in the interpleader complaint (Docket No. 28-2).  The court finds that the
summation of these facts forms a legally sufficient basis to create an inference of the bank's
fraudulent intent, and survive dismissal.

### C.    Pattern of Racketeering

A RICO claim requires the showing of at least two predicate acts of racketeering activity.
See Efron, 223 F.3d at 15.  The mere occurrence of two or more predicate acts, however, does not
constitute a pattern.  Id.  A plaintiff must also demonstrate (1) that the predicate acts are related, and
(2) that they pose a threat of continued criminal activity.  See Feinstein, 942 F.2d at 44. The
relatedness requirement is easily satisfied in this case since the predicate acts, as set forth by
Plaintiff, form part of a common fraudulent scheme all directed to a common end, to defraud
Plaintiff of the funds resulting from the sale of the consigned goods.  See, e.g., Fleet Credit Corp.
v. Sion, 893 F.2d 441, 445 (1st Cir. 1990) (holding that 95 fraudulent mailings alleged by plaintiff
were clearly related "because they were all part of the same fraudulent scheme").   However, in its

---

[13] Alvarez alleges that the first two letters were used to mislead it into believing that its funds
would be secure under Westernbank's control, further alleging that such tactics were used to
convince Alvarez to agree to the sale of the store and goods to Mendoza.  The third letter, Alvarez
alleges, was used to cover up the fact that the funds were allegedly being removed from the account
and to quell any suspicions on the part of Alvarez that would lead it to seek legal action.

**Civil No. 09-1558 (GAG)**                    14

motion, the bank avers that the complaint is devoid of any allegation to sustain the existence of a threat of continued criminal activity.

The Supreme Court has identified two methods for establishing continuity: (1) the "closed-ended" approach and (2) the "open-ended" approach. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 242 (1989). The former refers to a closed period of repeated conduct and the latter refers to past conduct that threatens repetition in the future. Id. at 241. Under both approaches, a plaintiff must demonstrate that the threat of continued activity comes in the form of the predicate act being committed. Id. at 242. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." Id. However, "[t]he continuity requirement is [] satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business . . . ." Id.

The court finds that Plaintiff has sufficiently alleged a "closed-ended" threat of continuity. In its complaint, Alvarez alleges a period of two and a half years in which the bank made daily sweeps of an account which was allegedly held in escrow for the Plaintiff. Plaintiff alleges that during this period, the bank obtained the deposits by means of false promises and misappropriated the same under false pretenses utilizing both mail and wire fraud to carry out its scheme. These repeated acts of bank fraud, constituting predicate acts under RICO, are sufficient to demonstrate a "closed-ended" pattern of continuity. See Fleet Credit Corp., 893 F.2d at 446 (clarifying H.J. Inc.'s approach as leading to the conclusion that "a plaintiff who alleges a high number of related predicate acts committed over a substantial period of time establishes that those acts amount to continued criminal activity.")[14]; see, e.g. id. at 447 (actions constituted continued criminal activity for RICO

_____

[14] This approach moved away from the previously recognized analysis which required the existence of many relevant factors to establish continuity: (1) the number [of predicate acts]; (2) the variety of predicate acts; (3) the length of time over which they were committed; (4) the number of victims; (5) the presence of separate schemes; and (6) the occurrence of distinct injuries. See Roeder v. Alpha Industries, Inc., 814 F.2d 22 (1st Cir.1987); Morgan v. Bank of Waukegan, 804 F.2d 970 (7th Cir.1986). Under the H.J.Inc. approach, a high number of predicate acts, committed over a substantial period of time will amount to continued activity, irrespective of the other factors. See Fleet

**Civil No. 09-1558 (GAG)**          15

purposes because "alleged criminal conduct spans years, not 'a few weeks or months'").

 Furthermore, in successfully demonstrating a threat of repetition, Plaintiff contends that all of the alleged actions taken by the bank were done so in the normal course of banking business. Alvarez avers that all of the methods used to perpetrate the alleged fraud, such as blocked accounts, guarantees, and the ability to debit clients' accounts, are all normal tools of the banking trade.  See Giuliano v. Fulton, 399 F.3d 381, 391 (1st Cir. 2005) (dismissing RICO claim for lacking threat of repetition when complaint failed to "allege that the racketeering acts were a part of the defendants' regular way of doing business").

 Finally, contrary to the assertions made by the bank, Plaintiff's complaint does not fall victim to the deficiencies recognized in Efron.  In Efron, the court dismissed the RICO claim, citing its narrow effect on only three victims as insufficient to sustain a claim of a pattern of racketeering. 223 F.3d at 18.  The court in Efron distinguished its ruling from the Supreme Court's decision in H.J., citing that in addition to the named plaintiffs in H.J., there were "[t]housands of telephone company customers presumably [] injured by the ongoing scheme."  Id. at 19.  Similar to the allegations in H.J. Alvarez has averred that the alleged actions of the bank have affected a multitude of victims.[15]  The far-reaching breadth of the impact of these actions is sufficient to distinguish this case from Efron.

 Based on the above assessment of 18 U.S.C. § 1962, the court **DENIES** Westernbank's Motion to Dismiss with regard to Plaintiff's § 1962(c) claim.  However, Plaintiff's claims under § 1962(a) and (d) are hereby **DISMISSED.**

 **2.   *Civil Law Fraud***

 Westernbank avers that Alvarez has failed to allege the basic elements required for his supplemental fraud claim.  The bank also contends that Alvarez has failed to state the circumstances

_____

Credit Corp., 893 F.2d at 447.

 [15] Plaintiffs list of victims includes itself, Mendoza, the F.D.I.C. the bank's stockholders and investing public, Mendoza's creditors, the I.R.S., Mendoza's employees, the Commonwealth's treasury, and the State Insurance Fund.

**Civil No. 09-1558 (GAG)**                    16

surrounding its fraud claim with legally sufficient particularity as required under the heightened pleading standard of Rule 9(b).[16]

The court finds that Alvarez has pled all the necessary elements of a charge of fraud, while also meeting the heightened pleading standard in asserting its claim. Under Puerto Rico law, a plaintiff asserting a claim for fraud must allege: (1) that a false representation was made; (2) that the plaintiff reasonably and foreseeably relied thereon; (3) that the plaintiff was injured by his reliance; and (4) that the defendant intended to defraud the plaintiff. See Wadsworth, Inc. V. Schwarz-Nin, 951 F. Supp 314, 323 (D.P.R. 1996). Plaintiff's alleged facts demonstrate: (1) the bank knew of the consignment agreement and failed to comply with it despite assurances to Plaintiff to the contrary; (2) Plaintiff reasonably relied on the bank's representations made in an effort to secure Plaintiff's cooperation; (3) the bank's failure to comply with the consignment agreement has resulted in Plaintiff's inability to recover the monies owed to it; and (4) the bank's efforts to obscure the scheme through mail fraud and the filing of the interpleader create an inference of fraudulent intent. The sum of these allegations forms a legally sufficient basis for a charge of fraud.[17] See North American Catholic Education Programming Foundation, Inc., 567 F.3d at 13 (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir.1992) (complaint must "set [] forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading")).

Moreover, the court finds that Plaintiff's civil law fraud claim is not barred by the statue of limitations. As Plaintiff points out, a delay in payment by Mendoza would not necessarily lead Alvarez to the conclusion that Westernbank had perpetrated fraud against Alvarez. Information regarding the alleged fraudulent acts committed by the bank only became available to Alvarez when the interpleader complaint was filed, which alerted Alvarez to the fact that a large portion of the

---

[16] See supra, 1(*B*)

[17] The facts supporting Alvarez's allegations of fraud are more fully described in Section 1 (*B*) of this opinion.

**Civil No. 09-1558 (GAG)**              17

proceeds from the sales of the furniture had been removed.  Once Alvarez became privy to the fact

that this was not a mere delay in payment, but was potentially a misappropriation of its funds, it  filed

its counterclaim against Westernbank.  Thus, requisite knowledge of a perpetrated fraud was not

gained until September 14, 2007, at the earliest.  Plaintiff's counterclaim, consisting of all of the

abovementioned claims, was filed on October 9, 2007.  This date falls within the one year limitations

period for a charge of civil law fraud.  The counterclaim was then dismissed by the court, *without*

*prejudice*, and the following complaint ensued.

Therefore, the court **DENIES** the bank's Motion to Dismiss with regard to Plaintiff's civil

law fraud claim.

### 3.      *Breach of Fiduciary Duty and Recovery of Funds or Property*

The bank avers, that because it was not party to the consignment agreement that it owed no

fiduciary duty to Alvarez as a third party dealing with their borrower (Mendoza).  See F.C. Imports,

Inc. v. First Nat'l Bank of Boston, 816 F. Supp. 78, 91 (D.P.R. 1993).  However in making this

assertion, the bank ignores the existence of the alleged oral agreement between itself and Alvarez.

Alvarez contends that, through this agreement, the parties created an escrow account where the

consigned funds would be held, thus establishing the foundation for the bank's fiduciary duty.  See

Mercurius Inv. Holding, Ltd. V. Aranha, 247 F.3d 328, 331(1st Cir. 2001) ("escrow agreement need

not be embodied in a formal contract . . . ."); see also 37 Am.Jur.2d Fraud and Deceit § 32 (2009)

("[i]t is not mandatory that a fiduciary relationship be formalized in writing").  Pursuant to the

agreement alleged by Alvarez, the bank was clearly acting as a fiduciary with respect to the funds

obtained through the sale of the consigned goods.  See 28 Am.Jur.2d Escrow § 26 (2009)

(recognizing that "[f]iduciary relationship is created by and inherent in nature of escrow agreement").

Therefore, regardless of whether Westernbank was a party to the consignment agreement,

Alvarez has alleged that the bank was party to a separate oral agreement establishing that the funds

would be held by the bank for Alvarez's benefit.  It is this agreement, which gave rise to a fiduciary

duty, that Plaintiff contends was breached when Westernbank fraudulently swept the funds from the

escrow account.  Therefore, when considering all the facts alleged by Plaintiff regarding this oral

**Civil No. 09-1558 (GAG)**                18

agreement, the court finds that Plaintiff has sufficiently pled its claim and **DENIES** the bank's motion with respect to the supplemental claim of breach of fiduciary duty.

The court comes to a similar conclusion when analyzing Westernbank's arguments for the dismissal of Alvarez's cause of action for the recovery of funds or property. Alvarez's claim is based upon the contention that the bank orally agreed to hold the funds in escrow and then breached this agreement by removing the funds from this account and sweeping them to other accounts owned solely by Westernbank. Therefore, the bank's argument that it was not party to the consignment agreement does not necessarily invalidate Plaintiff's claim for the return of the funds. As such, the court **DENIES** Westernbank's motion to dismiss Plaintiff's supplementary cause of action for recovery of funds or property.

### 4.    *Lender's Liability*

A corporation may be held liable for the debts of another corporation under the "instrumentality" doctrine. See F.C. Imports, Inc., 816 F. Supp. at 91. Under the doctrine, a plaintiff must demonstrate that a corporation or bank misused a subservient corporation by treating it as a mere business conduit for the purposes of the dominant entity. Id. In order to sufficiently plead a claim under the "instrumentality" doctrine, a plaintiff must demonstrate (1) that the dominant corporation controlled the subservient corporation and (2) that the dominant corporation proximately caused plaintiffs' harm through misuse of its control. Id. Further, to establish creditor liability under the doctrine, a plaintiff must show that the creditor assumed actual, participatory, and total control of the debtor. Id.

Westernbank relies on Matter of Clark Pipe and Supply Co., Inc., 893 F.2d 693 (5th Cir. 1990) in its motion, alleging that  the facts in that case are analogous to the situation presented in this case. However, contrary to the bank's assertions, the court in Clark Pipe noted several factors distinguishing it from the case at hand. The court in Clark Pipe pointed out that Associates (the controlling entity) did not exhibit many of the behaviors commonly found in a successful lender's liability claim. See id. at 701-02. For example, Associates did not own any stock of Clark (subservient entity); Associates made no management decisions for Clark; Associates did not place

**Civil No. 09-1558 (GAG)**                    19

any of its employees as either a director or officer of Clark; Associates never requested that Clark take a particular action at shareholder's meetings; Associates did not dictate to Clark which bills to pay; Associates did not mislead creditors to continue supplying Clark. Id.

Alvarez alleges in its complaint that these behaviors, which the Clark Pipe court highlighted were not present in that case, were wholly evident in the bank's dealings with Mendoza. (See Docket No. 1 at 8-10.) The court finds that, based on these pleadings, Alvarez provides a legally sufficient factual basis from which to support its allegations.

The bank also relies on the decision in F.C. Imports, Inc. to support its argument that Alvarez's lender liability claim is legally deficient. 816 F. Supp. 78. The court in F.C. Imports, Inc. found that the plaintiff's instrumentality claim failed because it presented no evidence that FNBB (controlling entity) controlled Novedades (subservient entity). Additionally, the plaintiff also failed to establish that FNBB's actions proximately caused the plaintiff's harm through the misuse of its control of Novedades. Id. at 92. In coming to its decision, the court stressed the fact that there was no single factual allegation asserting how FNBB's control of Novedades' caused the alleged injury to the plaintiff. Id.

The court finds that Alvarez has sufficiently overcome the recognized deficiencies of the pleadings in F.C. Imports, Inc.. For one, as previously noted, Alvarez has factually supported its allegations of control through the alleged financial and directorial actions taken by the bank that demonstrate its control over Mendoza. (See Docket No. 1 at 8-10.) Secondly, and described as "most significantly" by the court in F.C. Imports, Inc., 816 F. Supp. at 93, Alvarez has clearly asserted how Westernbank's control of Mendoza caused Mendoza's failure to comply with the consignment agreement to ensure that the proceeds of the furniture sales were received by Alvarez. Alvarez alleges, that by asserting its control over all of Mendoza's finances, the bank was able to access these funds and remove them with the knowledge that said funds did not belong to Mendoza or the bank.

The court finds that these allegations, supported by legally sufficient facts, are adequate to form a valid claim, and therefore **DENIES** Westernbank's motion to dismiss Alvarez's supplemental

**Civil No. 09-1558 (GAG)**                    20

claim of lender liability.

     *5.     Mortgage Foreclosure*

As Plaintiff's Federal RICO claims have not been dismissed, the court may entertain jurisdiction over the supplemental claims which form part of the same case or controversy as the federal claims. See 28 U.S.C. § 1367(a).  Therefore, the court **DENIES** Westernbank's motion to dismiss Plaintiff's state law mortgage foreclosure claim.

**IV.    Conclusion**

For the foregoing reasons, the court **GRANTS** in part and **DENIES** in part defendant Westernbank's Motion to Dismiss. (Docket No. 28).

**SO ORDERED**

In San Juan, Puerto Rico this 4th day of December, 2009.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge